Filed 7/17/15  P. v. Switt CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CARLOS SWITT,<br><br>    Defendant and Appellant. | B253084<br><br>(Los Angeles County<br>Super. Ct. No. KA101259) |

APPEAL from judgment of the Superior Court of Los Angeles County, Honorable Rogelio G. Delgado, Judge.  Affirmed.

Carey D. Gorden for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Paul M. Roadarmel, Jr. and Daniel C. Chang, Deputy Attorneys General, for Plaintiff and Respondent.

_____

**INTRODUCTION**

A jury convicted Defendant Carlos Swift of possession of a controlled substance in violation of Health and Safety Code section 11377.[1] Defendant contends he was not present when his trial commenced and, therefore, the court committed reversible error by conducting the trial despite his voluntary absence. (See Pen. Code, § 1043, subd. (b).)[2] Additionally, Defendant argues the court erred by summarily denying his *Marsden* motion (see *People v. Marsden* (1970) 2 Cal.3d 118) without allowing him to state any reasons for the requested dismissal of his appointed counsel. Neither contention has merit. We affirm.

**FACTS AND PROCEDURAL BACKGROUND**

On March 15, 2013, Special Agent Timothy Ohno and his partner, Pomona Police Officer Alyssa Bolstrom, encountered Defendant while on patrol in Pomona. Defendant consented to be searched by Agent Ohno, who found a plastic ziploc bag containing an

---

[1] The People charged the Health and Safety Code section 11377 offense as a felony and the jury convicted Defendant as such. Defendant admitted he had suffered one prior serious or violent felony conviction under the three strikes law, pursuant to which the trial court doubled Defendant's sentence on the felony conviction. (Pen. Code, §§ 667, subds. (b)-(i) & 1170.12, subds. (a)-(d).) Subsequent to sentencing, the voters enacted Proposition 47 (Cal. Const., art II, § 10, subd. (a)), which made certain drug- and theft-related offenses—including an offense under Health and Safety Code section 11377—misdemeanors, unless the offenses were committed by an ineligible defendant. (*People v. Rivera* (2015) 233 Cal.App.4th 1085, 1091 (*Rivera*).) After the parties fully briefed this appeal, Defendant supplemented the record with a minute order, filed in the trial court on December 15, 2014, recalling Defendant's sentence and reducing his Health and Safety Code section 11377 conviction to a misdemeanor. In the same order, the court resentenced Defendant to serve 360 days in the Los Angeles County jail and granted Defendant credit for 360 days in custody. In view of the order reducing his conviction to a misdemeanor, Defendant has withdrawn his appellate challenge to the trial court's denial of his motion to strike the prior felony conviction. Because the People charged the Health and Safety Code section 11377 offense as a felony, we have jurisdiction over the remainder of the appeal, notwithstanding the trial court's subsequent order deeming the conviction a misdemeanor. (*Rivera*, at pp. 1096-1097.)

[2] Further statutory references are to the Penal Code, unless otherwise designated.

off-white crystalline substance in Defendant's front right pocket. Lab testing determined the substance was 4.72 grams of methamphetamine.

On April 12, 2013, the Los Angeles County District Attorney filed an information charging Defendant with one count of possession of a controlled substance in violation of Health and Safety Code section 11377. Defendant was arraigned on the charge and pleaded not guilty.

Voir dire examination of prospective jurors commenced on June 4, 2013. Defendant was present for the examination, which continued into the following morning. After the prospective jurors were brought in that morning, Defendant initiated the following exchange with the court:

"THE DEFENDANT: Excuse me, Your Honor?

"THE COURT: No, don't say anything.

"THE DEFENDANT: I don't feel like this is a --

"THE COURT: Don't say anything.

"THE DEFENDANT: -- fair trial --

"THE COURT: Don't say anything.

"THE DEFENDANT: -- because I don't really trust my counsel.

"THE COURT: I'm gonna exclude you if you keep that up.

"THE DEFENDANT: That's all right. You can exclude me, but I don't think I'm getting a fair counsel [*sic*]."

The court excused the prospective jurors to address Defendant's concerns. Defendant told the court that he just met his appointed defense counsel and "didn't know if [he] could trust her yet." Defendant affirmed that he had concerns about his legal representation, at which point the court conducted a *Marsden* hearing.

The court began the hearing by indicating Defendant's motion was untimely because the trial had already commenced. Defendant nevertheless stated he was compelled to raise the issue because he did not "feel comfortable" with his attorney. Defendant maintained his attorney "came in too late in [his] trial" and, though he acknowledged she was "probably a good lawyer," he did not "feel like" she could

3

provide him adequate representation. After reiterating that he was "not comfortable" with his attorney, and emphasizing that the day's proceedings were "the longest period of time that [he] ever spent with her," Defendant's argument digressed into a discussion about whether the prospective jurors had seen him handcuffed earlier that morning. The trial court ended the *Marsden* hearing and denied the motion as untimely.

Prompted by some of the representations Defendant made during the *Marsden* hearing, the court questioned Defendant on whether he wished to participate in the trial and whether he would do so without being disruptive. Defendant replied that he was "not ready for a trial." The court asked again whether he would participate, to which Defendant replied, "No, I'm not." The court continued to press Defendant on whether he wished to participate in his trial, and Defendant continued to provide evasive responses. Following the exchange, the court found Defendant was not willing to participate in the trial, and ordered him removed from the courtroom.

After a recess, the court brought Defendant back into the courtroom to ensure that he understood his rights. Addressing Defendant, the court stated: "I brought you out one more time because I wanted to make sure that you understood what was going on here, and I wanted to make it clear that you do have the right to be present during your trial, and my first question to you is, is it your desire to be present during this trial?" Defendant responded, "No. Actually, I said I didn't even want to have this trial." The court explained to Defendant that even if he was not present during the trial, the trial would proceed; jurors would be selected, a jury would be empanelled and evidence would be presented. After the court pressed Defendant to state whether he understood and whether he desired to participate in the trial, Defendant responded: "I don't feel comfortable with this trial. That's the only answer that I can give you." The court concluded Defendant was not willing to participate, and advised Defendant and his counsel that if he wished to participate in his trial at any time, he could return to the courtroom.

Voir dire resumed and a jury was selected. During breaks in the prosecution's case, the court ordered defense counsel to provide a transcript or summary of the testimony to Defendant. The court also inquired whether Defendant wished to be present. Defense counsel affirmed that Defendant had no desire to participate.

Agent Ohno offered testimony concerning his consensual search of Defendant. A criminalist with the Los Angeles County Sheriff's Scientific Services Bureau testified that lab testing confirmed the crystalline substance found in Defendant's pocket was 4.72 grams of methamphetamine. Officer Bolstrom opined that 4.72 grams constituted a usable amount of methamphetamine. The jury found Defendant guilty of the charged Health and Safety Code section 11377 violation.

## DISCUSSION

1.      *The Court Did Not Error by Conducting the Trial in Defendant's Voluntary Absence*

Defendant contends the trial court committed reversible error by conducting the trial in his absence. Section 1043, subdivision (a) provides: "Except as otherwise provided in this section, the defendant in a felony case shall be personally present at the trial."[3] Section 1043, subdivision (b) sets forth the following exception: "The absence of the defendant in a felony case after the trial has commenced in his presence shall not prevent continuing the trial to, and including, the return of the verdict in . . . [¶] . . . [¶] (2) Any prosecution for an offense which is not punishable by death in which the defendant is voluntarily absent." Thus, as relevant here, the court is authorized to continue a trial in a felony defendant's voluntary absence so long as "the trial has commenced in his presence."

---

[3]      This rule is an outgrowth of a criminal defendant's federal and constitutional right to be present at trial. (See *United States v. Gagnon* (1985) 470 U.S. 522, 526; *People v. Gutierrez* (2003) 29 Cal.4th 1196, 1202; see also § 977.) This right, as section 1043, subdivision (b) demonstrates, can be waived. (See, e.g., *Gutierrez,* at pp. 1202-1203.)

Defendant argues the interpretation of the "commenced in his presence" clause in section 1043, subdivision (b) is controlled by *People v. Molina* (1976) 55 Cal.App.3d 173 (*Molina*). In that case, the felony defendant was present at voir dire proceedings through the selection of 11 jurors, at which time the trial court adjourned the proceedings until the following morning. When the proceedings resumed, the defendant was absent and was not in law enforcement custody. The court concluded the defendant had voluntarily absented himself and that voir dire should proceed. Defendant's attorney objected to proceeding with the trial in the defendant's absence. The court overruled the objection, the 12th juror was selected, the trial proceeded in the defendant's absence, and the jury found him guilty. (*Id.* at pp. 175-176.)

The *Molina* court reversed the conviction, concluding the exception set forth in section 1043, subdivision (b)(2) did not apply, despite the defendant's voluntary absence, because the trial had not commenced in the defendant's presence. Without addressing the underlying legislative intent, the *Molina* court held a trial commences for purposes of section 1043, subdivision (b) either at the time specified in section 12, subdivision (b)(1) of the Evidence Code or when jeopardy attaches. (*Molina, supra,* 55 Cal.App.3d at p. 177.) Under Evidence Code section 12, subdivision (b)(1), "A trial is commenced when the first witness is sworn or the first exhibit is admitted into evidence . . . ." As for jeopardy, the *Molina* court explained "[a] defendant in a jury trial is not in jeopardy until the jury is duly impanelled and sworn to try the cause." (*Molina,* at p. 177.) Because the defendant absented himself before the jury was impanelled and sworn, and before the first witness was sworn or the first exhibit admitted, the *Molina* court held the trial court erred by denying the defense's objection to proceeding in the defendant's absence. (*Ibid.*)

Defendant contends legislative inaction in the wake of *Molina* requires that we apply its interpretation of section 1043, subdivision (b) to the facts of this case. In that regard, Defendant emphasizes that *Molina* was decided in 1976, and the Legislature amended section 1043 in 1977 without changing or elaborating on the statutory definition of when a trial commences. (See Stats. 1977, ch. 1152, § 2.) Because *Molina* interpreted

6

section 1043, subdivision (b) to apply when a trial has commenced under the Evidence Code or when jeopardy attaches, and the Legislature is deemed to have been aware of judicial decisions in existence at the time it amends a statute, Defendant argues the Legislature must have intended the term "commenced" to be construed consistent with *Molina*. We disagree.

To be sure, "[i]t is a well-established principle of statutory construction that when the Legislature amends a statute without altering portions of the provision that have previously been judicially construed, the Legislature is presumed to have been aware of and to have acquiesced in the previous judicial construction. Accordingly, reenacted portions of the statute are given the same construction they received before the amendment." (*Marina Point, Ltd. v. Wolfson* (1982) 30 Cal.3d 721, 734.) However, the presumption that legislative inaction constitutes legislative acquiescence is not categorical; indeed, there are numerous other reasons why the Legislature may fail to act. (See *County of Los Angeles v. Workers' Comp. Appeals Bd.* (1981) 30 Cal.3d 391, 403-404.) As our Supreme Court explained, "[t]he Legislature's failure to act may indicate many things other than approval of a judicial construction of a statute: the ' " 'sheer pressure of other and more important business,' " ' ' " 'political considerations,' " ' or a ' " 'tendency to trust to the courts to correct their own errors . . . .' " ' (*Id.* at p. 404.) Thus, "[i]n the area of statutory construction, an examination of what the Legislature has done (as opposed to what it has left undone) is generally the more fruitful inquiry. '[L]egislative inaction is " 'a weak reed upon which to lean' " . . . .' [Citation.]" (*Harris v. Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1156.)

In this case, the significance of the Legislature's failure to act is further diminished by the lack of any indication that *Molina*'s interpretation of section 1043, subdivision (b) ever came to the Legislature's attention. (*County of Los Angeles v. Workers' Comp. Appeals Bd., supra,* 30 Cal.3d at p. 404.) This concern has particular force given that *Molina* was filed only a year before the Legislature amended the statute. (Cf. *Moore v. California State Bd. of Accountancy* (1992) 2 Cal.4th 999, 1017-1018 ["a presumption that the Legislature is aware of an administrative construction of a statute should be

7

applied if the agency's interpretation of the statutory provisions is of such longstanding duration that the Legislature may be presumed to know of it"].) Here, there is little that counsels in favor of the presumption advanced by Defendant, and there is a great deal that counsels against it.

The most compelling reasons for departing from *Molina*'s interpretation are those catalogued by the several courts that have unanimously rejected it. In *People v. Lewis* (1983) 144 Cal.App.3d 267 (*Lewis*), the defendant voluntarily absented himself from his trial before any jurors were selected after observing the jury venire did not include any black members. The *Lewis* court rejected *Molina*'s resort to the Evidence Code and jeopardy rules, observing the rationales for those rules were "completely different" from "the reason for requiring the trial to have 'commenced' before allowing a defendant's absence to waive his constitutional rights in felony cases."[4] (*Lewis,* at p. 278.) As for section 1043, subdivision (b), the *Lewis* court explained the "only function" of the presence-at-commencement requirement is "to insure the defendant really makes a voluntary and knowing waiver of his right to be present at the trial proceedings." (*Lewis,* at p. 279.) To satisfy that function, the court held, "it is not necessary that the jury have

---

[4]     With respect to Evidence Code section 12, subdivision (b)(1), the *Lewis* court explained the statute's "only function . . . is to demark which proceedings are governed by the Evidence Code enacted in 1967 and which may proceed under earlier rules. . . . In essence the section meant that unless a witness had been sworn or an exhibit admitted before January 1, 1967, the proceedings had to comply with the 'new' Evidence Code. That definition made perfect sense given the policies it implemented. If no evidence had yet been taken, there was no reason to exempt a trial from the new evidence rules, even if voir dire had started or been completed. But if some evidence had been introduced under the old law it was deemed unwise to shift rules in midstream and the trial was allowed to continue under the prior evidence provisions." (*Lewis, supra,* 144 Cal.App.3d at p. 278.)

As for double jeopardy, the *Lewis* court observed "a different rationale is at play." (*Lewis, supra,* 144 Cal.App.3d at p. 278.) "In jury cases," the court explained, "an accused cannot be said to have been truly in 'jeopardy' until the judge swears a jury empowered to convict that defendant. Hence, the swearing in of the jury becomes the critical point for purposes of a 'once in jeopardy' defense." (*Ibid.*) As we discuss above, these considerations are completely different than those that must shape the definition of when a trial commences under section 1043. (See *ibid.*)

8

been sworn or the first evidence introduced"; rather, "[i]t is enough the defendant is physically present in the courtroom where the trial is to be held, understands that the proceedings against him are underway, confronts the judge and voluntarily says he does not desire to participate any further in those proceedings." (*Ibid*.)

In *People v. Ruiz* (2001) 92 Cal.App.4th 162 (*Ruiz*), the court adopted *Lewis*'s interpretation, while also emphasizing the absurd results that following *Molina* would produce. As the *Ruiz* court explained, "[n]o legitimate objective is served by requiring the waiver of one's presence to occur only after the potential jurors have been sworn for voir dire, the jury is impaneled or the first witness is sworn. Indeed, delaying the allowance of a defendant's absence could lead to unnecessary hostility if the defendant tries to gain the desired absence by becoming 'disorderly, disruptive and disrespectful of the court' [citation] or by threatening to become so." (*Id.* at pp. 168-169.) The court in *People v. Granderson* (1998) 67 Cal.App.4th 703 put a finer point on it, observing "[a]s a matter of constitutional law, common understanding, and common sense, 'trial' in a criminal case includes the critical stage of jury selection . . . ." (*Id.* at p. 707.) The *Granderson* court continued, "It is this meaning of the phrase 'after the trial has commenced' in the defendant's presence that the Legislature obviously intended in section 1043(b)(2). This is so because the readily apparent purpose of that section is to prevent a defendant from intentionally frustrating the orderly processes of his trial by voluntarily absenting himself from the courtroom. [Citations.] To construe the phrase in any other way would defeat this purpose and would lead to absurd consequences." (*Granderson,* at p. 708.)

9

Consistent with the views expressed in *Lewis*, *Ruiz*, and *Granderson*, we conclude that *Molina* conflicts with section 1043, subdivision (b)'s legislative purpose and that extending *Molina* to the facts of this case would produce a patently absurd result.[5] Defendant was physically present in the courtroom, and knowingly and voluntarily waived his right to be present at trial during jury selection. Indeed, Defendant did so repeatedly, under sustained questions by the trial court as to whether he wanted to participate in his trial. This was more than sufficient to satisfy the legislative purpose underpinning section 1043, subdivision (b)'s requirement that the defendant be present at the trial's commencement.

Moreover, the practical result of applying the *Molina* interpretation in a case such as this would be to prevent any trial from going forward until the criminal defendant desires to permit it. This, in the words of the United States Supreme Court, " 'would be a travesty of justice which could not be tolerated . . . [and] we do not think that any rule of law or constitutional principle leads us to any conclusion that would be so disastrous as well to the administration of justice . . . .' " (*Diaz v. United States* (1912) 223 U.S. 442, 457.) The trial court properly invoked section 1043, subdivision (b) when it continued the trial in Defendant's voluntary absence.

---

[5]     For these same reasons we reject Defendant's attempt to invoke the rule of lenity. The rule of lenity is "inapplicable unless two reasonable interpretations of the same provision stand in relative equipoise, i.e., that resolution of the statute's ambiguities in a convincing manner is impracticable." (*People v. Jones* (1988) 46 Cal.3d 585, 599.) The manifestly reasonable legislative purpose identified in *Lewis*, contrasted with the absurd results that would follow from applying *Molina*, leaves no doubt as to the correct interpretation of section 1043, subdivision (b).

2. *The Trial Court Properly Exercised Its Discretion in Denying Defendant's Marsden Motion*

Defendant contends the trial court abused its discretion by "summarily" denying his *Marsden* motion "without allowing [him] to state *any* reasons for the requested dismissal" of his appointed attorney. The record does not support Defendant's contention.

"When a defendant seeks to discharge his appointed counsel and substitute another attorney, and asserts inadequate representation, the trial court must permit the defendant to explain the basis of his contention and to relate specific instances of the attorney's inadequate performance. [Citation.] A defendant is entitled to relief if the record clearly shows that the first appointed attorney is not providing adequate representation [citation] or that defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result [citations]." (*People v. Crandell* (1988) 46 Cal.3d 833, 854 (*Crandell*).) "The decision whether to grant a requested substitution is within the discretion of the trial court; appellate courts will not find an abuse of that discretion unless the failure to remove appointed counsel and appoint replacement counsel would 'substantially impair' the defendant's right to effective assistance of counsel." (*People v. Roldan* (2005) 35 Cal.4th 646, 681, overruled on other grounds by *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.)

A bare claim that a criminal defendant does not trust his or her appointed attorney is insufficient to warrant dismissal. "[I]f a defendant's claimed lack of trust in, or inability to get along with, an appointed attorney were sufficient to compel appointment of substitute counsel, defendants effectively would have a veto power over any appointment and by a process of elimination could obtain appointment of their preferred attorneys, which is certainly not the law." (*Crandell, supra,* 46 Cal.3d at p. 860.)

11

The record does not support Defendant's claim that the trial court summarily denied his *Marsden* motion "without allowing [him] to state *any* reasons for the requested dismissal" of his appointed attorney.  Prior to the *Marsden* hearing, Defendant advised the court that he had just met his attorney, he was not "really comfortable" with her, he did not "really know her," and he "didn't know if [he] could trust her yet."  Defendant ultimately indicated he was concerned about his counsel's representation, at which point the court ordered a *Marsden* hearing.  During the hearing, Defendant repeated that he did not want to "go through with this trial" and he did not "feel comfortable" with his attorney because "[s]he came in too late."  He acknowledged she was "probably a good lawyer," but stated "I don't feel like she's being [a] good representor [*sic*] to me."  After challenging the merits of imprisoning him for a drug problem, Defendant reiterated that he did not "feel comfortable with [his attorney] yet," emphasizing that the day's proceedings marked "the longest period of time" he had spent with her.  Defendant's argument then digressed into a discussion of what the jurors had seen before the court ordered the *Marsden* hearing, prompting the court to conclude the proceeding.

The record demonstrates Defendant had ample opportunity to explain the basis for his contention that his attorney's representation was inadequate, and there is nothing to indicate Defendant's objections ran any deeper than his assertion that he had not known his attorney long enough to feel comfortable with her or know whether he could trust her.  A criminal defendant's claimed lack of trust in his appointed attorney is not sufficient to establish the attorney is not providing adequate representation.  (*Crandell, supra,* 46 Cal.3d at p. 860.)  We find no abuse of discretion.

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


KITCHING, J.


We concur:


EDMON, P. J.


EGERTON, J. *

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.