Filed 3/17/25  P. v. Araujo CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>RAFAEL MENDES ARAUJO,<br><br>    Defendant and Appellant. | D081682<br><br><br>(Super. Ct. No. SCD291755) |


APPEAL from an order of the Superior Court of San Diego County, Aaron H. Katz, Judge.  Affirmed.

George L. Schraer, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Arlene A. Sevidal, and Jon S. Tangonan, Deputy Attorneys General, for Plaintiff and Respondent.


Rafael Mendes Araujo appeals the order suspending imposition of sentence and placing him on probation for two years after a jury found him

guilty of assault with a deadly weapon and fleeing the scene of an accident in which someone was injured. He claims two errors in the pattern instruction the trial court gave the jury on the assault charge require reversal of the conviction on that charge. We disagree and affirm.

## FACTUAL BACKGROUND

Zachary Overson was pedaling his bicycle up Mount Soledad one morning when he encountered a line of vehicles obstructing the bicycle lane as drivers crossed the lane to make a turn. He tapped the vehicles as he passed them to alert the drivers to his presence. Araujo was driving one of the vehicles Overson tapped. Araujo asked whether Overson had hit the vehicle, and he responded he had done so to avoid a collision.

Overson continued up the road, noticed Araujo was following him, and made a U-turn to go down the road. Araujo also made a U-turn and continued pursuing Overson. To get way from Araujo, Overson changed directions again and proceeded back up the road.

When Overson later rode his bicycle down Mount Soledad, he again encountered Araujo. Araujo followed Overson and, according to Overson, twice tried to drive into him. The second time he succeeded in knocking Overson off his bicycle onto a pile of construction materials. Overson suffered abrasions, contusions, and a concussion. Araujo drove away without stopping or speaking to Overson.

Araujo claimed he pursued Overson to get information from him because he had damaged Araujo's vehicle. He denied trying to drive into Overson or actually doing so.

## PROCEDURAL BACKGROUND

The People charged Araujo with assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)) and fleeing the scene of an accident in which

2

someone was injured (Veh. Code, § 20001, subd. (a)).  They alleged the deadly weapon used in the assault was a vehicle.  (*Id.*, § 13351.5.)

The trial court instructed the jury on assault with a deadly weapon in part as follows:

> "To prove that the defendant is guilty of this crime, the People must prove that:
>
> "1. The defendant did an act with a deadly weapon other than a firearm that by its nature would directly and probably result in the application of force to a person;
>
> "2. The defendant did that act willfully;
>
> "3. When the defendant acted, he was aware of facts that would lead a reasonable person to realize that his act by its nature would directly and probably result in the application of force to someone;
>
> "AND
>
> "4. When the defendant acted, he had the present ability to apply force with a deadly weapon.
>
> "Someone commits an act *willfully* when he or she does it willingly or on purpose.  It is not required that he or she intend to break the law, hurt someone else, or gain any advantage.
>
> "The terms *application of force* and *apply force* mean to touch in a harmful or offensive manner.  The slightest touching can be enough if it is done in a rude or angry way.  Making contact with another person, including through his or her clothing, is enough.  The touching does not have to cause pain or injury of any kind.
>
> "The touching can be done indirectly by causing an object to touch the other person.
>
> "The People are not required to prove that the defendant actually touched someone.

3

"The People are not required to prove that the defendant actually intended to use force against someone when he acted." (CALCRIM No. 875.)

The jury found Araujo guilty of assault with a deadly weapon and of fleeing the scene of an accident in which someone was injured, and found true the allegation the deadly weapon was a vehicle. The trial court suspended imposition of sentence and placed Araujo on formal probation for two years.

## DISCUSSION

Araujo claims two portions of the pattern instruction the trial court gave the jury on the mental state required for conviction of assault with a deadly weapon misstated the law. We review such claims de novo (*People v. Lewis* (2023) 14 Cal.5th 876, 900; *People v. Posey* (2004) 32 Cal.4th 193, 218) and consider each in turn.

Araujo first challenges the portion of the instruction requiring the People to prove "he was aware of facts that would lead a reasonable person to realize that his act by its nature would directly and probably result in the application of force to someone." (CALCRIM No. 875.) He complains "this formulation of this mens rea element is inherently unfair and should be changed because the focus should be on the awareness of the defendant, not the awareness of a reasonable person." Araujo contends the instruction "did not comport with the case law recognizing that the mens rea of assault consists of the general intent to commit a battery." He further contends that because evidence was presented from which the jury reasonably could have found he did not realize his driving would directly and probably lead to the application of force to Overson, the instructional error requires reversal of the conviction of assault with a deadly weapon. We disagree.

Our Supreme Court set out the mental state required for an assault conviction in *People v. Williams* (2001) 26 Cal.4th 779 (*Williams*). In that

4

case, "[t]he trial court instructed the jury that defendant was guilty of assault only if he 'willfully and unlawfully committed an act that by its nature would probably and directly result in the application of physical force being applied to the person of another.' " (*Id.* at p. 783.) "The Court of Appeal found this instruction erroneous because it described a mental state of negligence," and "held that assault requires either a desire to cause an application of physical force or substantial certainty that such an application would result." (*Id.* at pp. 783–784.) The Supreme Court reversed. (*Id.* at p. 791.) It explained that "a specific intent to injure is not an element of assault because the assaultive act, by its nature, subsumes such intent." (*Id.* at p. 786.) Rather, the mental state for assault "is established upon proof the defendant willfully committed an act that *by its nature will probably and directly result* in injury to another, i.e., a battery.' " (*Id.* at p. 787.)[1] "In other words, a defendant guilty of assault must be aware of the facts that would lead a reasonable person to realize that a battery would directly, naturally and probably result from his conduct. . . . He, however, need not be subjectively aware of the risk that a battery might occur." (*Williams*, at p. 788.) The Supreme Court thus held the required mental state for assault is "actual knowledge of those facts sufficient to establish that the act by its nature will probably and directly result in the application of physical force against another." (*Id.* at p. 790.)

To define the mental state the People had to prove for the jury to find Araujo guilty of assault with a deadly weapon, the trial court used the same

[1]    In the context of assault and battery, the term "injury" refers to " ' " 'the least touching' " ' " that is offensive to the recipient. (*People v. Colantuono* (1994) 7 Cal.4th 206, 214, fn. 4.) A battery requires application of some force, but the force need not cause bodily harm or pain or even leave a mark. (*Ibid.*) For assault "[n]o actual touching is necessary, but the defendant must do an act likely to result in a touching, however slight, of another in a harmful or offensive manner." (*People v. Wyatt* (2012) 55 Cal.4th 694, 702.)

language the Supreme Court used in *Williams*. (Compare CALCRIM No. 875 with *Williams*, *supra*, 26 Cal.4th at pp. 788, 790.) Araujo acknowledges we must follow *Williams*. (See *People v. Perez* (2020) 9 Cal.5th 1, 13; *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) He invites us to write a critique of the decision, as did the Court of Appeal in *People v. Wright* (2002) 100 Cal.App.4th 703, "to make it more likely the Supreme Court will change and correct the law on this point." We decline the invitation. The Supreme Court denied the petition for review in *Wright* (*id.* at p. 725) and has repeatedly followed *Williams* (see, e.g., *In re B.M.* (2018) 6 Cal.5th 528, 533–534; *People v. Perez* (2018) 4 Cal.5th 1055, 1066 (*Perez*); *People v. Wyatt, supra*, 55 Cal.4th at p. 702; *People v. Hartsch* (2010) 49 Cal.4th 472, 507–508; *People v. Wyatt* (2010) 48 Cal.4th 776, 781). Araujo must address his request for a change in the law to the Supreme Court or to the Legislature. Until any such request is granted, we must follow *Williams* and reject his first claim of instructional error.

As his second claim of error, Araujo contends the trial court misstated the law of assault when it instructed the jury as follows: "The People are not required to prove that the defendant actually intended to use force against someone when he acted." (CALCRIM No. 875.) Araujo argues: "Like simple assault, assault with a deadly weapon is a general intent crime, and the general intent consists of the intent to use force against someone when committing the assaultive act." According to Araujo, the court omitted an essential element of the crime when it told the jury the People did not have to prove he intended to use force against someone, and that omission requires reversal of the conviction because he presented evidence he intended not to run into Overson but merely to get him to stop. We are not persuaded.

6

Assault is a general intent crime, not a specific intent crime. (*Perez, supra*, 4 Cal.5th at p. 1066; *Williams, supra*, 26 Cal.4th at p. 788; *People v. Rocha* (1971) 3 Cal.3d 893, 899.)[2] The intent required for assault with a deadly weapon "is the general intent to wilfully commit an act the direct, natural and probable consequences of which if successfully completed would be the injury to another." (*Rocha*, at p. 899, fn. omitted.) "The intent to cause any particular injury [citation], to severely injure another, or to injure in the sense of inflicting bodily harm is not necessary." (*Ibid.*, fns. omitted.) "[B]ecause the law seeks to prevent the wrongful application of physical force upon the victim 'irrespective of any actual purpose to cause it,' the mens rea element of assault is established by proof of general criminal intent." (*In re Tameka C.* (2000) 22 Cal.4th 190, 198.) In other words, assault "does not require any intent to cause an application of physical force" (*People v. Aznavoleh* (2012) 210 Cal.App.4th 1181, 1186–1187), "because the assaultive act, by its nature, subsumes such an intent" (*Williams*, at p. 786). This means Araujo "did not have to intend to hit [Overson] to be guilty of assault." (*People v. Golde* (2008) 163 Cal.App.4th 101, 109.) The only intent the People had to prove was Araujo's intent to do an act with a deadly weapon (his vehicle) that by its nature would directly and probably result in the application of force to Overson. (*Williams*, at p. 790; *Rocha*, at p. 899.) The trial court therefore did not err by instructing the jury the People need not prove Araujo intended to use force against someone.

---

[2]  "When the definition of a crime consists of only the description of a particular act, without reference to intent to do a further act or achieve a future consequence, we ask whether the defendant intended to do the proscribed act. This intention is deemed to be a general criminal intent. When the definition refers to defendant's intent to do some further act or achieve some additional consequence, the crime is deemed to be one of specific intent." (*People v. Hood* (1969) 1 Cal.3d 444, 456–457.)

7

Given our conclusion the trial court did not commit the instructional errors claimed by Araujo, we need not, and do not, consider his related claims the errors were prejudicial and require reversal of the conviction of assault with a deadly weapon.  (See *People v. Homick* (2012) 55 Cal.4th 816, 860, fn. 28; *People v. Lewis* (1983) 144 Cal.App.3d 267, 281.)

DISPOSITION

The order suspending imposition of sentence and granting probation is affirmed.

IRION, J.

WE CONCUR:

McCONNELL, P. J.

BUCHANAN, J.